## Stouch v. Zeigler.

*Will—Heirs—Issue—Estate tail—Rule in Shelley's case—Devise.*

Testatrix devised an interest in real estate in equal parts to her three sisters, E., A. and C. "and to their heirs." She further directed that if C. "should die without issue her share shall be divided amongst the surviving legatees named." *Held*, that C. took an estate tail converted into a fee by the Act of April 27, 1855, P. L. 368.

Argued May 16, 1900. Appeal, No. 154, Jan. T., 1900, by defendants, from judgment of C. P. York Co., April T., 1900, No. 61, on case stated in case of Augusta C. Stouch et al. v. Elmer C. Zeigler et al. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and MESTREZAT, JJ. Affirmed.

Case stated to determine title to real estate.

The facts appear by the opinion of BITTENGER, P. J., which was as follows:

The counsel for the parties have agreed upon the following case stated for the opinion of the court:

Now, to wit: March 19, 1900, it is hereby agreed by and between the parties to the above suit, that the following case be stated for the opinion of the said court, in the nature of a special verdict, in which the following facts are admitted by the parties hereto, viz:

1. That on December 19, 1899, the above named plaintiffs by their agreement in writing bearing said date agreed " that they the said parties of the first part shall and will on January 20, 1900, by good and lawful deed, grant, convey and assure to the said Elmer C. Zeigler, and Edward P. Stair, their heirs and assigns (in fee simple) and deliver to them possession thereof, all that certain lot of ground situate on the southern side of Market street, in the city of York, in the state of Pennsylvania, bounded on the north by said Market street, on the east by property formerly belonging to the Spangler estate, on the south by Mason alley, and on the west by property of John H. Small. Said lot having a width of thirty-two feet, more or less, and extending the same width 230 feet to the aforesaid alley." In consideration whereof, the said defendants, Elmer C. Zeigler and Edward P. Stair, then and there agreed in and by said written agreement, to pay to said parties of the first part thereto, viz: to the above named plaintiffs, their heirs, executors or administrators upon delivery of the aforesaid deed for said premises, on January 20, 1900, the sum of $9,000, for said lot of ground.

2. That on March 17, 1900, the said plaintiff tendered to the defendants above named, a deed for said premises from George Spahn, trustee appointed by the orphans' court of York county, Pennsylvania, to sell the same to said defendants, purporting to convey the same to the said defendants in fee simple, as provided for in said above mentioned agreement, which said deed the said defendants then and there refused to accept or to pay for said premises, denying that the same conveyed to them a title to said premises in fee simple as stipulated for in said agreement.

3. The plaintiff's title, tendered to the defendants by the deed of said trustee, was acquired as follows: Howard E. Wantz, late of said city of York, deceased, died September 11, 1892, seized in his demesne as of fee, of said above described premises, free of all incumbrances, known as lot No. 102 East Market street, York, Pennsylvania.

Said testator by his last will and testament, duly probated in the office of the register of wills of York county, Pennsylvania (a copy of which is hereto attached and made part of this case stated), devised said premises as follows, to wit:

(1) To his father and mother "during their joint lives or the life of the survivor of them." Both parents were deceased before the making of the above mentioned agreement for the sale of said premises.

(2) "At their death . . . . the one-fourth part to my wife Arabella, for and during her life or widowhood, and at her death or marriage, to my children in equal portions." Testator's wife Arabella is still living and unmarried; also the following children, viz: Edgar H. Wantz, who is of age, and Florence A. Wantz, who is a minor, having for her guardian, John Fahs.

(3) "And the remaining three-fourths of said house and lot of ground I give and devise in equal parts to my three sisters, Emma Stine, Augusta C. Stouch and Carrie S. Wantz, and to their heirs." Two of these three legatees are living and of age, viz: Augusta C. Stouch, married to George W. H. Stouch, and Carrie Wantz married to John A. Brillinger. The third, Emma Stine, and Alexander Stine, her husband, are both deceased, leaving to survive them the following children, all of whom are of full age, viz: Estella E. Stine, who is unmarried, Paul W. Stine, whose wife is Laura Stine, William F. Stine, whose wife is Effie E. Stine, and George W. Stine whose wife, Calista Stine, is a lunatic, and Bertha, whose husband is Edward Hamme.

(4) "If the said Carrie should die without issue, I direct that her share shall be divided amongst the surviving legatees named." Said Carrie Wantz (now Brillinger) has one minor child living, viz: David Fahs Brillinger, having no guardian.

4. That Calista Stine, wife of George W. Stine, one of the plaintiffs, was a lunatic at and before the date of the execution of said agreement for the sale of said premises and still remains such.

That said George W. Stine on February 21, 1900, filed his petition in the court of common pleas of York county for the appointment of three persons to inquire into the insanity of his said wife, Calista, whereupon the said court appointed three proper persons for said purpose, who, upon due notice to the

lunatic and a blood relation of hers, after due inquiry and examination into her said insanity and after a personal examination of herself, reported to said court that they found her to be a lunatic without lucid intervals and incapable of the management of her own person or estate, which report was on March 4, 1900, duly confirmed by said court. And the said George W. Stine was then and there by said court appointed trustee of said Calista Stine and by decree of said court as well as by the several acts of assembly in such case made and provided, was duly authorized and empowered to dispose of and sell all her right, title and interest in the above described premises as by reference to said proceedings in said court will more fully appear.

5. That on March 12, 1900, the above named plaintiffs, together with John Fahs, guardian of said Florence A. Wantz, and George W. Stine, as trustee of said Calista Stine, his wife, they being all of the legatees and all parties interested in said above described real estate, or having any interest therein, vested or contingent, present or future, presented their petition to the orphans' court of said county praying said court to appoint George Spahn trustee for the sale of said real estate and to grant an order of sale directing said trustee to sell said premises at private sale to Elmer C. Zeigler and Edward P. Stair for the sum of $9,000 and to convey the same to said purchasers in fee simple clear of all incumbrances and divested of and discharged from all contingent interests, remainders or reversions therein in favor of any of said petitioners; whereupon the said court after a full hearing of said matters, being of the opinion that said sale would be for the best interests of all parties interested in any manner in said real estate, on said March 12, 1900, appointed said George Spahn trustee, and granted said order of sale as prayed for in said petition upon said trustee giving bond duly approved by the court, conditioned for the faithful discharge of his duties, which was then and there done by him.

6. That the time originally fixed in said agreement for the delivery of said deed to the defendants and the payment of the purchase money of the said premises was extended by the parties hereto to the date of tender of said deed as above set forth, and that if the said trustee's deed tendered to the defendants

on March 17, 1900, be held by the court to convey to the defendants a title in fee simple to the premises above described, as provided for in said agreement of December 19, 1899, it shall have the same effect as if tendered on the date originally fixed.

If the court shall be of the opinion that under the provisions of the will of Howard E. Wantz, deceased, and under the proceedings had in said court constituting George W. Stine trustee of Calista Stine, his wife, and under the proceedings had in the orphans' court of said county, authorizing George Spahn, trustee aforesaid, to convey the above described premises to the defendants, that said deed for the premises above described, as tendered by said George Spahn, trustee, to the above named defendants, conveyed to and vested in them a good and indefeasible title to said premises in fee simple as provided for in said agreement, then judgment to be entered for the plaintiffs and against the defendants for the sum of $9,000 with costs of suit. Otherwise judgment to be entered for the defendants with costs of suit, with right to either party to sue out a writ of error to the Supreme Court.

Two questions are raised: First, whether the proceedings whereby Calista Stine was found and declared a lunatic and the acts of her husband as her trustee in signing and joining in the petition for an order of sale of real estate in question is effective in barring said Calista Stine, the lunatic wife's claim to dower in her husband's interest and estate in said premises, in the event of her surviving her husband, George W. Stine. Second, is the estate of Carrie Wantz, now Brillinger, under the terms of the will of her brother, Howard Wantz, deceased, a fee; and is the title tendered to the defendants by the deed mentioned, a good and indefeasible title, in fee simple, as provided for in the agreement of sale of the real estate described in the said deed?

We find that the proceedings of the court, by commission, under the provisions of the Act of October 28, 1851, P. L. 1852, 725, sec. 7, were regular, and that, therefore, any right of dower in Calista Stine or which she might hereafter have in the premises, will be barred by the acceptance of the deed and payment of the purchase money, by Elmer C. Zeigler and Edward P. Stair, the defendants in the case stated.

As to the second question, as to what estate Carrie Wantz,

now Brillinger, has in the share in the real estate devised to her, we are of the opinion that her estate is an indefeasible fee simple estate.

The language of the will is: "And the remaining three-fourths of said house and lot of ground I give and devise in equal parts to my three sisters, Emma Stine, Augusta Stouch and Carrie Wantz and to their heirs; if the said Carrie Wantz should die without issue, I direct that her share shall be divided among the surviving legatees named."

In Eichelberger v. Barnitz, 9 Watts, 447, it is decided that if a devise is made to one in fee, and "if he die without issue," or for want of issue or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, which, if he have issue, passes to them ad infinitum by descent as tenants in tail, and the entailment may be barred by a deed executed and acknowledged for that purpose.

"The exceptions to the application of the general rules are either in cases of personal estate, in which the construction is more liberal in favor of executory devises, or when the time at which the devise over is to take effect, is expressly or impliedly limited to a particular period, within a life or lives in being, and twenty-one years after; as where the contingency is, if the first taker die without issue before arriving at twenty-one, or if he die unmarried and without issue, or if he die without leaving issue behind him, or living at the time of his decease, or if the devise over be of life estate, which implies necessarily, that such devise over may outlive the first estate; in all these cases, the testator has been considered as meaning a failure of issue within a fixed period, and not an indefinite failure of issue. But without some such circumstances to distinguish the case, it must be considered as falling within the particular cases of the same kind already decided, as well as the general course of reasoning adopted by the judges in analogous cases."

The case above cited stands as unshaken authority in Pennsylvania: Hackney v. Tracy, 137 Pa. 53; Grimes v. Shirk, 169 Pa. 74.

It is said in these cases the words "die without issue" or other equivalent expressions occurring in a devise, impart a general and indefinite failure of issue and an estate tail in the first taker. In Hackney v. Tracy, supra, it is said in the opinion

of the Supreme Court: " We have repeatedly said that the case of Eichelberger v. Barnitz has never been shaken, and it is certainly the law of this state at the present time.    There have undoubtedly been cases in which we have held that where language somewhat similar was used, the failure of issue, upon which the estate of the first taker was to determine, was a definite and not an indefinite failure of issue ; but, in all of these cases some particular reasons, founded upon the language of the will indicating that the testator intended a definite failure of issue, controlled the decision.    It was contended for the appellants that such a reason exists in the present case, in the fact that the limitation over is to the sister Mary, by name, and that she, being a living person at the death of the testator, a definite failure of issue must have been intended, and that such a limitation was not too remote to sustain an executory devise.    There are cases in which such a fact is held important, in connection with other considerations, but, standing alone, it is clearly not sufficient, as has been held in many of the cases.    Thus, in Eichelberger v. Barnitz the limitation over was to the testator's ' other three children, Adam and Anna Mary and Susanna.' They were the testator's own children, and were specifically named as second takers, which might be well urged against the failure of issue being regarded as indefinite ; yet it was so held."

Of the cases cited by the defendants' counsel the devise in Nickolson v. Bettle, 57 Pa. 384, was held to be an executory devise, because the word "surviving" was used showing the intention of the testator to mean a definite failure of issue at the death of his sons.

In Taylor v. Taylor, 63 Pa. 481, the estate was held to be an estate for life, remainder to her children in fee, because the word " children " was used in connection with "issue " in the will.

For the same reason in Robins v. Quinliven, 79 Pa. 333, the devisee was held to take an estate only for life, because in the language used in the will, the word " issue " meant children.

In Smith v. Coyle, 83 Pa. 242, the fee was held to be vested in the children or issue of the first taker, because it appeared from the language used in the will, that a definite failure of issue was meant.

So in Parkhurst v. Harrower, 142 Pa. 432, the estate was held to

be a life estate in the son, because the words " issue " and " children " were used in the will synonymously. These cases are all brought within the exceptions recognized, where the words " die without issue " are held not to mean an indefinite failure of issue, because the will as construed by the court showed that the testator meant a definite and not an indefinite failure of issue.

Here there is nothing in the will to show that the testator meant a definite failure of issue, to bring this devise within any of the recognized exceptions.

This case is ruled by a long line of decisions which it is not necessary to cite, ending in the recent cases of Flick v. Forest Oil Co., 188 Pa. 317, and Palethorp v. Palethorp, 194 Pa. 408.

Furthermore, the fact is that the devise over, on the death of Carrie Wantz (now Brillinger) without issue, is to the surviving legatees named, that is to Emma Stine and Augusta Stouch or their children. They have all by their own act or that of the guardians joined the other parties in interest in the petition for the order of sale, and they will, therefore, be forever estopped from denying the validity of the sale. Upon their receiving and releasing for their shares, and standing by and permitting Carrie Wantz (now Brillinger) to receive and release for her share of the proceeds in the premises, they and those claiming under them, must stand forever concluded from questioning the title of the purchasers, the defendants, and their heirs and assigns : Wilson v. Bigger, 7 W. & S. 111; Johnson v. Fritz, 44 Pa. 449; Maple v. Kussart, 53 Pa. 348. In this last case it is decided that the rule applies to judicial sales such as this : Jacoby v. McMahon, 174 Pa. 133.

The estate vested in Carrie Wantz, now Brillinger, in the real estate devised to her, under the decisions, is an estate tail converted into a fee by the Act of April 27, 1855, P. L. 368, the first section of which is as follows : " That wherever hereafter by any gift, conveyance or devise an estate in fee tail would be created according to the existing laws of this state, it shall be taken and construed to be an estate in fee simple, and as such shall be inheritable and freely alienable."

For the reasons stated, we are of opinion that the deed tendered to the defendants by George Spahn, trustee to sell the premises described in the agreement and deed, conveys to and

1900.]        Opinion of Court below—Opinion of the Court.

vests in them a good and indefeasible title in fee simple, in and to the premises mentioned and described therein.

And now, March 31, 1900, we find in favor of the plaintiffs and against the defendants in this case for the sum of $9,000, with costs of suit, and we enter judgment accordingly.

*Error assigned* was the judgment of the court.

*Horace Keesey,* for appellants, cited Haldeman v. Haldeman, 40 Pa. 29; Middleswarth v. Blackmore, 74 Pa. 414; Nicholson v. Bettle, 57 Pa. 384; Taylor v. Taylor, 63 Pa. 481.

*Nevin M. Wanner,* for appellee, cited Eichelberger v. Barnitz, 9 Watts, 447; Lawrence v. Lawrence, 105 Pa. 335; Ray v. Alexander, 146 Pa. 242; Robinson's Est., 149 Pa. 418; Flick v. Forest Oil Co., 188 Pa. 317; Palethorp v. Palethorp, 194 Pa. 408; Reimer v. Reimer, 192 Pa. 571.

PER CURIAM, May 29, 1900:

The opinion of the learned court below contains all that is necessary to be said in support of the conclusion arrived at and we do not feel that we can add anything of consequence to it. We affirm the judgment upon the opinion filed.

Judgment affirmed.